IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAVON GRAYSON-MORROW,

                              Plaintiff,

    v.                                                          OPINION and ORDER

MARATHON COUNTY, DARLENE HABLE,                                 21-cv-124-jdp
CAITLIN GAULKE, and SHENG LAO,

                              Defendants.

---

Pro se plaintiff Javon Grayson-Morrow is proceeding on claims that both jail staff and the county violated his constitutional rights by failing to provide adequate medical care. Specifically, he alleges that he complained to correctional officers Darlene Hable, Caitlin Gaulke, and Sheng Lao about symptoms he was experiencing because of his high blood pressure, but they refused to help him, resulting in him losing consciousness and requiring hospitalization. He also alleges that Marathon County had an unconstitutional policy that caused his injuries.

Defendants have moved for summary judgment on all claims. Dkt. 25. They contend that the correctional officers' responses to Grayson-Morrow's requests for medical attention were objectively reasonable and therefore consistent with the Constitution. Defendants also deny that the county has an unconstitutional policy.

Grayson-Morrow did not file a response to defendants' motion for summary judgment by his deadline, so in accordance with the court's procedures, I will accept the defendants' proposed findings of fact as true. Dkt. 17, "Motions for Summary Judgment," § II.C; Fed. R. Civ. P. 56(e)(2). But in deciding defendants' motion, I must still view the facts in the light most favorable to Grayson-Morrow. *See Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th

Cir. 2011). The undisputed facts show that the correctional officers' conduct was objectively reasonable and that Marathon County did not have an unconstitutional policy, so I will grant defendants' motion for summary judgment.

ANALYSIS

Grayson-Morrow is asserting four claims: (1) on March 4, 2020, Hable refused to help him when he repeatedly asked for medical assistance before passing out; (2) on December 5, 2020, Gaulke refused to allow Grayson-Morrow to lie down in his cell when he told Gaulke that he was feeling dizzy and lightheaded before passing out and hitting his head; (3) on January 13, 2022, Lao refused to do anything when Grayson-Morrow told her that he was feeling dizzy and lightheaded before passing out and hitting his head; and (4) the county had a policy or practice that caused his injuries. He is not contending that medical staff or the county failed to adequately his treat his high blood pressure.

Summary judgment on these claims is only proper if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If a reasonable jury could find for Grayson-Morrow, summary judgment is inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986).

## A. The Correctional Officers

Grayson-Morrow's claims against the correctional officers are governed by the Due Process Clause of the Fourteenth Amendment because Grayson-Morrow was a pretrial detainee during the relevant times. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). To succeed on these claims, Grayson-Morrow must prove that: (1) he had an objectively serious

medical condition; (2) the responding officer made an intentional decision regarding his medical care; (3) the responding officer's actions were objectively unreasonable; and (4) those actions caused him harm. *Cirves v. Syed*, No. 19-CV-725-JDP, 2022 WL 7458760, at *3 (W.D. Wis. Oct. 13, 2022). Defendants seek summary judgment only on the issue whether their conduct was objectively reasonable, so I will focus on that issue.

### 1. Darlene Hable

In his complaint, Grayson-Morrow alleged that he twice informed Hable that he was lightheaded, dizzy, and needed medical treatment. Dkt. 6, at 2. In response, Hable did nothing but tell Grayson-Morrow that she would inform the jail's nurse "if she saw" the nurse. *Id.* When Grayson-Morrow fainted a short time later, other detainees were unable to call for help because the intercom wasn't working. *Id.* These allegations were enough to show at the pleading stage that Hable had unreasonably denied medical care to Grayson-Morrow.

But now Grayson-Morrow's allegations are contradicted by defendants' proposed findings of fact, which I must accept as true. Those facts show that Hable didn't learn about Grayson-Morrow's situation until she was informed by other staff that there was a medical emergency in Grayson-Morrow's cell. Dkt. 27, ¶¶ 9–14, 35–38 and Dkt. 29, ¶¶ 5–8. At that point, she immediately responded to Grayson-Morrow's cell and then assisted him into a wheelchair; another officer took him to see the nurse.  Dkt. ¶¶ 16–17.

The reasonableness of a correctional officer's response to a detainee's medical condition must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time[.]" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). An officer cannot respond to a situation she is unaware of. *See Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Hable didn't know about Grayson-Morrow's condition until after he had already

3

lost consciousness, and when she did learn he needed help, she responded immediately. Under those circumstances, no reasonable jury could find that Hable's actions were objectively unreasonable, so I will grant summary judgment to Hable.

### 2. Caitlin Gaulke

Grayson-Morrow alleged in his complaint that he started feeling dizzy and lightheaded while in the jail's dayroom on December 5, 2020. Dkt. 6, at 3. Grayson-Morrow told Gaulke using the jail intercom about his symptoms, but Gaulke refused Grayson-Morrow's request for permission to go to his cell to lie down. *Id.* Later, another detainee told Gaulke that Grayson-Morrow was getting worse, but Gaulke again refused to let Grayson-Morrow go to his cell. *Id.* Grayson-Morrow fainted and fell to the floor, hitting his head. *Id.* These allegations were enough at the pleading stage to show that Gaulke had acted unreasonably in denying medical care to Grayson-Morrow.

Defendants admit that Gaulke refused Grayson-Morrow's request to go to cell. Dkt. 27, ¶ 52. But they say this was because detainees aren't allowed in their cells during dayroom time and because Gaulke would not be able to monitor Grayson-Morrow's condition from his cell. *Id.*, ¶¶ 52–53. Defendants also say that Gaulke didn't just ignore Grayson-Morrow. Rather, Gaulke asked Grayson-Morrow if he would like to see a nurse, and Grayson-Morrow said no. *Id.*, ¶ 51. At that point, Gaulke informed the officer supervising the dayroom that Grayson-Morrow reported feeling unwell but refused to see medical staff. *Id.*, ¶ 56 Gaulke did not take additional action because Grayson-Morrow did not present signs of distress that would suggest he needed immediate medical attention. *Id.*, ¶ 55. But at the end of her shift, Gaulke trained a surveillance camera on Grayson-Morrow to monitor his condition, and she informed her shift replacement of his complaints. *Id.* at ¶¶ 57–58.

Gaulke's conduct was objectively reasonable. As for Gaulke's refusal to allow Grayson-Morrow to return to his cell, a concern that Gaulke would not be supervised in his cell is reasonable. "[A] court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Kingsley*, 576 U.S. at 399–400.

If Gaulke had simply refused Grayson-Morrow's request to return to his cell without taking any other action, Grayson-Morrow would have a stronger claim. But that's not what happened. Gaulke asked Grayson-Morrow if he wanted to see the nurse, and Grayson-Morrow declined. Gaulke could not force Grayson-Morrow to accept medical treatment. Perhaps if it had been obvious that Grayson-Morrow was experiencing a medical emergency, more action would be required. But Grayson-Morrow didn't appear to be in distress, so it was reasonable for Gaulke to proceed by continuing to monitor Grayson-Morrow and alerting other relevant staff. *See Self v. Bergh*, 835 F. App'x 873, 874–76 (7th Cir. 2020). The court will grant summary judgment to Gaulke.

### 3. Sheng Lao

Grayson-Morrow alleged in a supplement to his complaint that on January 15, 2022, he told Lao using the intercom that he was lightheaded, dizzy, and thought he was going to faint. Dkt. 18, at 2. Even after Grayson-Morrow explained that he was in the emergency room earlier that morning for his high blood pressure, Lao instructed him to follow the jail's procedure for requesting non-emergency medical care. *Id.* When another detainee told Lao that Grayson-Morrow's condition worsened, Lao still did not help. *Id.* These allegations were

enough at the pleading stage to show that Lao had unreasonably denied medical care to Grayson-Morrow.

Defendants' proposed findings of fact tell a different story. Defendants say that Lao immediately notified the jail's medical staff of Grayson-Morrow's complaint and received confirmation that a nurse was in route to see him minutes later. *Id.* at ¶¶ 76 and 79. It was reasonable for Lao to refer Grayson-Morrow's complaint to medical staff. *See Miranda*, 900 F.3d at 343–44. Lao is entitled to summary judgment as well.

## B. Marathon County

A municipality may be held liable for a constitutional violation if an official policy or conduct that can be fairly described as municipal policy directly caused the violation. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). In the screening order, I allowed Grayson-Morrow to proceed on two theories of municipal liability: (1) jail medical staff were consistently unavailable to respond to Grayson-Morrow's medical complaints, suggesting a systemic problem at the jail; and (2) the jail's intercom system was broken for a long time, suggesting that the county was on notice that detainees were unable to ask for emergency medical assistance when they needed it.

Neither of these theories is supported by the facts. As for a systemic problem with staffing or training, the undisputed facts show that jail staff did respond promptly when they learned Grayson-Morrow needed assistance, so there is no basis for inferring that there was a problem with staffing or training. As for the broken intercom, the undisputed facts show that it was inadvertently disabled during a software update, and once the condition became known to jail officials, the county took steps to remedy the matter. Dkt. 27, ¶¶ 46–47. The county fixed the problem once they had notice of it, so no reasonable jury could infer that the county

had a policy of preventing detainees from seeking medical assistance through the intercom. I will grant summary judgment to the county.

ORDER

IT IS ORDERED that:

1.  Defendants Marathon County, Darlene Hable, Caitlin Gaulke, and Sheng Lao's motion for summary judgment, Dkt. 25, is GRANTED.

2.  The clerk of court is directed to enter judgment in defendants favor and close this case.

Entered March 17, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge